UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE LUBBEN,

    Plaintiff,

v.

    Case No. 1:15-cv-1204

    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
    _____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff alleged a disability onset date of April 1, 2013. PageID.238. She identified her disabling conditions as bipolar disorder and post traumatic stress disorder (PTSD). PageID.242. Plaintiff completed a GED and had past employment as a factory worker (production line welder and injection molding machine tender), home health care aide, and newspaper delivery person. PageID.89-90, 243. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on August 8, 2014. PageID.43-53. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I. LEGAL STANDARD**

This Court's review of the Commissioner's decision is typically focused on

determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff has alleged a disability onset date of April 1, 2013. As an initial matter, the ALJ found that an earlier decision denying plaintiff's application for benefits on March 28, 2012 was final and binding through the date of that decision. PageID.43. Having made this determination, the ALJ addressed the extent to which he adopted the previous determination of plaintiff's residual functional capacity (RFC):

> In determining the claimant's residual functional capacity, the undersigned considered Acquiescence Ruling 98-4(6), *Drummond v. Commissioner of Social Security*, which states that a prior hearing decision's findings of a claimant's residual functional capacity must be adopted by subsequent adjudicators of claims filed under the same title of the Social Security Act in determining whether the claimant is disabled with respect to an unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.
>
> For the period beginning with the currently alleged onset date of April 1, 2013, in considering AR 98-4(6), the medical and other evidence warrants only a few specific changes to the residual functional capacity finding of the decision of the March 2012. The undersigned has included an additional description that the occasional interaction with co-workers and supervisors must also be brief and superficial in nature. In view of the additional carpal tunnel release procedures, forceful gripping and grasping are eliminated. Because of the changes shown on post-March 2012 x-rays, the residual functional capacity also eliminates the operation of foot controls with the right lower extremity.

PageID.48.

After addressing the application of AR 98-4(6), the ALJ found that plaintiff's present claim failed at the fourth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 1, 2013, and met the insured status requirements of the Social Security Act through December 31, 2015. PageID.45-46. At the second step, the ALJ found that plaintiff had severe impairments as follows: mild right carpal

4

tunnel syndrome (status-post release surgery) and moderate left carpal tunnel syndrome (status-post two carpal tunnel release surgeries); a bipolar disorder; a panic disorder; PTSD; a personality disorder; and, a history of alcohol abuse (in long-term remission).  PageID.46.  In this regard, the ALJ identified three non-severe impairments: obesity; hyperlipidemia; and pre-diabetes (for which plaintiff takes medication).  *Id*.  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  *Id.*

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) of the Regulations, except: with the upper extremities, can frequently perform lifting, carrying, pushing and pulling within light weight parameters.  Claimant can never climb ladders, ropes, or scaffolds.  She can never crawl.  She can perform frequent handling (gross manipulation) and fingering (fine manipulation).  She must avoid concentrated exposure to vibration and should avoid all use of hazardous machinery and unprotected heights.  Work is limited to unskilled jobs as defined in the Dictionary of Occupational Titles (DOT) with Specific Vocational Preparation (SVP) level of one or two, with simple, routine tasks that can be learned in approximately 30 days, involving no more than simple work-related decisions, with few workplace changes.  Claimant can have no interaction with the general public.  She can have, at most, occasional brief and superficial interaction with co-workers and supervisors.  There can be no operation of foot controls with the right lower extremity and no forceful gripping or grasping.

PageID.48.  Based on this RFC, the ALJ found that plaintiff could perform her past relevant work as an injection-mold machine operator.  PageID.51.  *Id.*

In the alternative, the ALJ proceeded to step five, where he determined that plaintiff could perform a significant number of unskilled, light exertional jobs in the national economy.  PageID.52. Specifically, the ALJ found that plaintiff could perform unskilled work in Michigan such as: housekeeping cleaner (6,000 jobs); packager (6,500 jobs); and assembler (3,500 jobs).

PageID.52-53. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from April 1, 2013 (the alleged onset date) through August 8, 2014 (the date of the decision). PageID.53.

### III. Discussion

Plaintiff sets forth a single issue on appeal:

**The ALJ's decision wrongly assesses the opinion of the treating psychiatrist.**

Plaintiff contends that the ALJ failed to properly evaluate the opinion of plaintiff's treating psychiatrist, Cassie Stanton, D.O. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a

claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Plaintiff's claim hinges on Dr. Stanton's April 29, 2014 opinion, which stated that plaintiff was unable to meet competitive standards in the following areas: work in coordination with or proximity to others without being unduly distracted; perform at a consistent pace without an unreasonable number and length of rest periods; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; deal with normal work stress; and deal with stress of semi-skilled and skilled work. PageID.467-468. The doctor's narrative states that plaintiff has limited social and emotional skills to respond appropriately, and "often ends up acting erratically or bizarrely vs. psychological destabilizing in times of stress which has resulted in hospitalization in the past." PageID.468. The doctor concluded that plaintiff's impairments would cause her to be absent from work about four days a month. *Id*.

Prior to addressing the Dr. Stanton's opinion, the ALJ found that:

> In terms of the claimant's mental impairments, the evidence of record does not persuade or convince the undersigned that much has really changed since the March 28, 2012 decision. By that, the claimant continues to take psychotropic medications that have a positive effect on her symptoms and her mood and there is a reference to outpatient counseling. [In this regard, the undersigned considered

7

counsel's contention in Exhibit B-15E that either Listing 12.04 or 12.06 was now met based on deficits in social functioning and concentration, persistence, or pace] [sic]. The undersigned does not find such an argument remotely convincing]. The claimant's mental problems are of a long-term nature; according to her testimony and statements, the psychological impairments and difficulties have been present most of her life.

PageID.49.

The ALJ evaluated Dr. Stanton's opinion as follows:

The undersigned assigned reduced weight to the April 29, 2014 opinion statement of Cassie Stanton, DO, in Exhibit B-6F [PageID.467-468]. The record does not reflect the degree of erratic or bizarre behavior that the physician's narrative comment suggests. Additionally, there is no explanation to explain reasonably the prediction that the claimant would be absent from work about four days per month.

PageID.50.

In evaluating Dr. Stanton's opinion, the relevant medical record consists of those generated from April 1, 2013 (the alleged onset date) through April 29, 2014 (the date of Dr. Stanton's opinion). The ALJ's decision summarized records from May, July, August and October, 2013, as follows:

At the Cherry Street Health Services on July 23, 2013, the bipolar I disorder was described as stable. Claimant's medications included Zoloft and Lorazepam (Ativan). In May 2013, the claimant was oriented to time, place, person, and situation and she was not anxious. There was grossly normal intellect (without formal testing) (Exhibit B-lF/1-3, 9-10).

On August 16, 2013, the claimant reported that she was tolerating Geodon much better with use at dinner; overall, she was feeling less fatigued and that she found it helpful to sleep more soundly at night. The claimant denied mania, suicidal ideation, hallucinations and paranoia. She denied having a depressed mood, although anxiety continued. Claimant's young daughter had disruptive behaviors that could overwhelm the claimant. She reported using Ativan twice daily or less frequently. The claimant was receiving counseling. In October 2013, the claimant was well groomed, appropriate, alert and in no apparent distress. She was oriented. Also in October 2013, the claimant said that medications helped her mood and stability. Behavior was odd and exaggerated in an anxious way. Claimant displayed an

> anxious mood and a restricted affect. Memory was intact and attention was gained and directed. Thought processes were logical and circumstantial while thought content revealed a somatic preoccupation, but was otherwise unremarkable (Exhibit B-3F).

PageID.47.

> Plaintiff's brief refers to additional doctor visits in November 2013 and February 2014:
>
> At the next visit on November 19, 2013, she reported being under stress because of an upcoming independent psychiatric evaluation which had led to increased daily feelings of being overwhelmed, anxious, gritting her teeth, and having a sense of being threatened with "losing it again." On mental status examination her mood was anxious and her attitude was described as cooperative and discouraged. Dr. Stanton increased her Ativan to regularly be scheduled twice per day. The last visit before the hearing was February 18, 2014. Apparently Ms. Lubben's insurance company did not accept a prior authorization for brand name Geodon. So she was back on the generic version, for which she was grateful, as it was helpful in dealing with the mood changes. On mental status examination Dr. Stanton noted that her reasoning, judgment and impulse control were all fair, but her behavior was still slightly odd, though pleasant and engaging.

Plaintiff's Brief (docket no. 11, PageID.476) (citations omitted).[1]

Neither party points to any medical evidence from the relevant time period which would support or explain Dr. Stanton's comment regarding plaintiff's "erratic" or "bizarre" behavior. There is no statement from Dr. Stanton defining the nature of this behavior and how it results in a disabling condition. The ALJ's review of Dr. Stanton's opinion is admittedly brief. However, when read in conjunction with his summary of the relevant records, the ALJ's decision provides good reasons for the weight assigned to the doctor's opinion.

Plaintiff also contends that the ALJ failed to properly address Dr. Stanton's opinion under with the regulations because it did not answer four questions: (1) is the doctor a treating

---

[1] The Court omitted the citations to the record because the "PageID" references were incorrect.

source?; (2) has she rendered a medical opinion?; (3) is the opinion well supported?; and (4) is the opinion inconsistent with other substantial evidence? *See* Plaintiff's Brief at PageID.486. Contrary to plaintiff's contention, the regulations require that the ALJ's decision only needs to include "'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion' -- not an exhaustive factor-by-factor analysis." *Francis v. Commissioner Social Security Administration*, 414 Fed. Appx. 802, 804 (6th Cir. 2011). "[T]he ALJ's failure to *explicitly* cite the regulation factors is no impediment to meaningful review and is therefore no grounds for reversal." *Infantado v. Astrue*, 263 Fed. Appx. 469, 474 (6th Cir. 2008) (emphasis in original). In this regard, the Court looks to "a reading of the entire opinion" to determine whether the ALJ's decision is supported by substantial evidence. *See Bradford v. Secretary of Department of Health & Human Services*, 803 F.2d 871, 873 (6th Cir. 1986).

   Here, the ALJ identified Dr. Stanton as a treating physician, identified a statement from the doctor which was treated as an opinion, and determined that the opinion was not well supported by the evidence. *See* 20 C.F.R. §§ 404.1527(c) and 416.927(c). As discussed, the ALJ did not explicitly find that Dr. Stanton's opinion was inconsistent with the other evidence. However, he was not required to do so. *See Francis*, 414 Fed. Appx. at 804; *Infantado*, 263 Fed. Appx. at 474; *Bradford*, 803 F.2d at 873. By pointing out the lack of medical records to support the doctor's opinion (e.g., documentation of plaintiff's erratic and bizarre behavior, inappropriate responses or hospitalizations during the relevant time period), the ALJ established that the doctor's opinion was inconsistent with the other evidence. *See* PageID.47. Accordingly, plaintiff's claim of error will be denied.

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: March 24, 2017                                              /s/ Ray Kent
                                                                                   Ray Kent
                                                                                   United States Magistrate Judge